IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCOS ZULUETA, JUAN CARLOS GUERRERO, SILVIO MARTIN, and SEAN MITCHELL,<br><br>Plaintiffs<br><br>v.<br><br>THOMAS CHUCKAS, as an individual and in his position as Director of the Bureau of Thoroughbred Horse Racing of the Pennsylvania Horse Racing Commission,<br><br>Defendant | CIVIL ACTION NO. 1:18-CV-356<br><br>(Chief Judge Conner) |

## MEMORANDUM

Plaintiffs Marcos Zulueta ("Zulueta"), Juan Carlos Guerrero ("Guerrero"), Silvio Martin ("Martin"), and Sean Mitchell ("Mitchell") commenced this action against defendant Thomas Chuckas ("Chuckas") asserting an unlawful deprivation of their constitutionally protected property interests pursuant to 42 U.S.C. § 1983. (Doc. 1). Chuckas moves to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 4). The court will grant the motion.

### I. Factual Background & Procedural History

Zulueta, Guerrero, and Martin are licensed trainers and owners of thoroughbred race horses in the Commonwealth of Pennsylvania. (Doc. 1 ¶¶ 4-6, 10). Mitchell also owns thoroughbred race horses in Pennsylvania. (Id. ¶ 7). Chuckas serves as Director of the Bureau of Thoroughbred Horse Racing of the

Pennsylvania State Horse Racing Commission ("the Commission"). (See id. ¶ 9); 3 PA. CONS. STAT. § 9311.

On October 13, 2017, the Commission served plaintiffs with subpoenas in connection with an investigation prompted by anonymous complaints of "hidden [horse] ownership and program training."[1] (Doc. 1 ¶¶ 13-14). The subpoenas sought various business records related to plaintiffs' horse racing and warned that failure to comply within 20 days would result in suspension of their licenses. (Id. ¶¶ 15-16). In response, plaintiffs submitted a motion to quash or amend the subpoenas on October 21, 2017, arguing that the subpoenas were overbroad and unreasonable. (Id. ¶ 17).

Discussions regarding the subpoenas were unsuccessful, and Chuckas and the Commission suspended Guerrero, Zulueta, and Martin on November 7, 2017. (Id. ¶¶ 17-18). Guerrero, Zulueta, and Martin immediately appealed. (Id. ¶ 18). Chuckas and the Commission suspended Mitchell on November 17, 2017, and Mitchell appealed three days later. (Id. ¶ 19a).[2] The Commission granted a hearing to Zulueta, Guerrero, and Martin, and a separate hearing to Mitchell, but denied supersedeas to all plaintiffs. (Id. ¶¶ 18, 27). On November 22, 2017, the Commonwealth Court of Pennsylvania granted a stay of Zulueta, Guerrero, and Martin's suspensions until the Commission could hold a hearing. (Id. ¶ 26). The

---

[1] Program training occurs when a person is listed as the trainer of a horse, but does not actually perform the training function. (Doc. 1 ¶ 14). Hidden ownership is self-explanatory, occurring when the individual identified on the official racing program as a horse's owner is not the true owner. (Id. at 21 n.2).

[2] The complaint includes two distinct paragraphs labeled paragraph 19. For clarity, the court will refer to them as 19a and 19b, respectively.

2

Commission reconsidered Mitchell's suspension and granted him supersedeas several days after the Commonwealth Court's ruling. (Id. ¶ 28).

The Commission convened a hearing for all plaintiffs on November 29, 2017, and issued a decision on December 15, 2017, upholding the suspensions and denying the motion to quash or amend the subpoenas. (Id. ¶¶ 29-30). Plaintiffs appealed the Commission's decision to the Commonwealth Court, and on January 12, 2018, the court granted stays to all plaintiffs. (Id. ¶¶ 32-33). The Commission rescinded the suspensions and restored the plaintiffs to good standing shortly thereafter. (Id. ¶ 35).

Plaintiffs filed this action asserting Chuckas deprived them of their constitutional rights in violation of the Due Process Clause of the Fourteenth Amendment. Chuckas moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

### A. Rule 12(b)(1)

A court may dismiss a claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See FED. R. CIV. P. 12(b)(1). Such jurisdictional challenges take of one two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction. Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v.

3

United States, 535 F.3d 132, 139 (3d Cir. 2008)).  In either instance, it is the plaintiff's burden to establish jurisdiction.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A defendant may properly raise the jurisdictional defense of Eleventh Amendment immunity in a motion to dismiss pursuant to Rule 12(b)(1).  See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)); see also Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 318 (3d Cir. 2013) (citing Blanciak, 77 F.3d at 693 n.2).  The court may consider Eleventh Amendment issues *sua sponte*, but is not required to do so.  Bowers v. Nat'l Collegiate Athletic Ass'n, 346 F.3d 402, 417 (3d Cir. 2003) (citation omitted); see also Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 394 (1998).

**B.     Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly,

4

550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials. See 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under Section 1983, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro,

5

51 F.3d 1137, 1141 (3d Cir. 1995)).  Chuckas does not dispute that he was a state actor at all times relevant herein.

Plaintiffs have commenced this action against Chuckas in his individual capacity and in his official capacity as Director of the Bureau of Thoroughbred Horse Racing.  Chuckas argues that plaintiffs received due process in connection with the suspension of their licenses and that he is entitled to qualified immunity.  Plaintiffs rejoin that their rights to due process entitled them to a pre-deprivation hearing in the absence of an "emergency situation."  They also assert that qualified immunity is unavailable because Chuckas intentionally violated plaintiffs' rights.

### A. Individual Capacity

Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted.  Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).  No liability will attach if a reasonable actor could have believed the challenged conduct was in compliance with settled law.  See id.  The doctrine cloaks government officials with "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted), and "ensure[s] that insubstantial claims against government officials [will] be resolved prior to discovery."  Pearson, 555 U.S. at 231-32 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)).  The defense generally "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Ashcroft v. al-Kidd, 563 U.S. 731, 743, (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  An official is entitled to qualified immunity even when the official "clearly should have been aware of the governing legal principles" as long as

6

he or she "could have believed their conduct would be consistent with those principles" based on information then available.  Adamo v. Dillon, 900 F. Supp. 2d 499, 509 (M.D. Pa. 2012), aff'd on other grounds, 539 F. App'x. 51 (3d Cir. 2013) (nonprecedential) (quoting Larsen v. Senate of Pa., 154 F.3d 82, 87 (3d Cir. 1998)).

The burden to establish qualified immunity rests with the defendant claiming its protection.  Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989)).  A court evaluating a claim of qualified immunity considers a two-pronged inquiry: whether, based on the facts, a constitutional right has been violated and, if so, whether the right was "clearly established" at the time of the alleged violation.  See Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232).  A court may begin its qualified immunity analysis with either prong.  See Pearson, 555 U.S. at 239.  In Pearson, the Supreme Court recognized that, in certain circumstances, a case may be easily resolved by addressing the clearly established prong at the outset.  See id.  Such is the case with Chuckas' asserted qualified immunity defense.

A court must "frame the precise contours" of the right at issue before determining whether that right is clearly established.  Spady, 800 F.3d at 638. The Supreme Court of the United States has repeatedly admonished that, when analyzing qualified immunity, courts should not "define clearly established law at a high level of generality."  al-Kidd, 563 U.S. at 742; see also Kisela v. Hughes, 584 U.S. __, 138 S. Ct. 1148, 1152-53 (2018); Mullenix v. Luna, 577 U.S. __, 136 S. Ct. 305, 308 (2015).  A plaintiff need not produce a case directly on point, but existing

7

precedent must have placed the constitutional question "beyond debate." Mullenix, 136 S. Ct. at 308 (quoting al-Kidd, 563 U.S. at 741). The state actor must have "fair notice" that his conduct was impermissible under federal law; thus the reasonableness of his actions "is judged against the backdrop of the law at the time of the conduct." Kisela, 138 S. Ct. 1152. The appropriate inquiry is whether the Constitution prohibited the conduct in "the specific context of the case," *viz.*, the situation the state actor confronted. Mullenix, 136 S. Ct. at 308-09 (citing Haugen v. Brosseau, 543 U.S. 194, 199-200 (2004)). The specific contours of the issue in the present action are as follows: whether the holder of a horse training license has a constitutionally protected property right therein, entitling him or her to a pre-deprivation hearing prior to suspension of said license for noncompliance with an administrative subpoena.[3] (See Doc. 1 ¶ 19b, 40; Doc. 6 at 11; Doc. 8 at 1).

Under Pennsylvania law, plaintiffs had a legitimate property interest in their training and operating licenses. See Adamo, 900 F. Supp. 2d at 509 n.5; accord Barry v. Barchi, 443 U.S. 55, 64 n.11 (1979); see also Cimorelli v. Tioga Cty., No. 4:16-CV-710, 2017 WL 551910, at *2 (M.D. Pa. Feb. 10, 2017) (collecting cases). Nevertheless, the suspension of a horse training license does not warrant a pre-deprivation hearing in all circumstances. See Barry, 443 U.S. at 64; Adamo, 900 F.

---

[3] Plaintiffs suggest that the constitutionality of denying them a pre-deprivation hearing turns on the presence of an "emergency situation." (Doc. 1 ¶¶ 20, 39; Doc. 8 at 1). We decline to adopt this framework. The presence of an emergency situation is not germane to our analysis because Chuckas' qualified immunity turns on whether the right to a pre-deprivation hearing was clearly established at the time of the suspensions, and not whether plaintiffs' suspensions in and of themselves were violations of their due process rights.

Supp. 2d at 513-14. The state may suspend a license to protect an important interest absent a pre-deprivation hearing, without transgressing constitutional protections, provided that the licensee is afforded a prompt post-deprivation judicial or administrative hearing. See Barry, 443 U.S. at 64; Adamo, 900 F. Supp. 2d at 511; Moreno v. Penn Nat'l Gaming, Inc., 904 F. Supp. 2d 414, 424 (M.D. Pa. 2012).

Plaintiffs did not have a clearly established right to a pre-deprivation hearing at the time the Commission suspended their licenses. The Commission has an interest in preserving the integrity of horse racing and, when that integrity is at risk, may suspend plaintiffs' licenses without a pre-deprivation hearing when a prompt post-deprivation hearing is afforded to them. See Adamo, 900 F. Supp. 2d at 511. No Supreme Court decision placed Chuckas on notice that a pre-deprivation hearing under the circumstances *sub judice* is constitutionally mandated, nor do plaintiffs identify any consensus among the courts of appeals establishing such a right. To the contrary, the only authorities on point hold that no pre-deprivation hearing is required. See Barry, 443 U.S. at 64; Moreno, 904 F. Supp. 2d at 424; Adamo, 900 F. Supp. 2d at 511.

Moreover, nothing in the Race Horse Industry Reform Act ("the Act"), 3 PA. CONS. STAT. § 9301 *et seq.* placed Chuckas on notice that suspending plaintiffs' licenses without a pre-deprivation hearing was in conflict with settled law. Chuckas suspended plaintiffs' licenses for failing to comply with the Commission's administrative subpoenas issued pursuant to 3 PA. CONS. STAT. § 9311(d)(3)(vii). (Doc. 1 ¶¶ 18-19a). Provisions of the Act enable the Commission to suspend a

license where the licensee "[h]as violated a rule, regulation or order of the commission."  3 PA. CONS. STAT. § 9323(g.1)(4).  The Act does not define what the phrase "rule, regulation, or order of the Commission" includes.  A separate section of the Act enables the Commission to issue administrative subpoenas, but there is no specific mention of an enforcement mechanism.  See id. § 9311(d)(3)(vii).

This court has previously held that a pre-hearing suspension of a horse training license for failing to comply with the Commission's investigatory interview requests did not violate due process.  Adamo, 900 F. Supp. 2d at 513-14 (Rambo, J.). We need not address whether Chuckas could enforce the subpoenas through the suspension of licenses, only whether or not Chuckas reasonably believed that, under these facts, his actions were in compliance with the law.  See Pearson, 555 U.S. at 244-45.  Plaintiffs concede that it is possible Chuckas was mistaken in his understanding of the scope of his statutory authority to enforce the subpoenas. (Doc. 8 at 7).  It is patently reasonable for the Director of the Bureau of Thoroughbred Horse Racing to have believed that the Act permits the Commission to suspend a license for noncompliance with a statutorily authorized administrative subpoena.

Plaintiffs asseverate that Chuckas imposed the license suspensions with malicious intent and that "[t]here was no mistake involved in his calculated actions." (Doc. 8 at 7; Doc. 1 ¶ 43).  However, only the "objective reasonableness of an official's conduct" is central to the question of qualified immunity, not the official's intent.  Messerschmidt v. Millender, 565 U.S. 535, 571-72 (2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "[B]are allegations of malice" cannot

10

overcome Chuckas' qualified immunity. See Adamo, 900 F. Supp. 2d at 509 (quoting Harlow, 457 U.S. at 818). Chuckas' reliance on the language of Section 9323(g.1)(4) in suspending plaintiffs' licenses was reasonable, and plaintiffs' asserted right to a pre-deprivation hearing was not clearly established. Chuckas is therefore entitled to qualified immunity.

### B. Official Capacity

Plaintiffs also assert a Section 1983 claim against Chuckas in his official capacity as Director of the Commission's Bureau of Thoroughbred Horse Racing. (See Doc. 1 at 1). Under Section 1983, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)). An official capacity suit is "treated as a suit against the entity." Id. at 166.

The Eleventh Amendment precludes federal claims for monetary damages against a state and its agencies. U.S. CONST. amend. XI; see Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008). Under the doctrine of Eleventh Amendment immunity, "[n]either a State nor its officials acting in their official capacities are 'persons' under § 1983." Hafer v. Melo, 502 U.S. 21, 26 (1991) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). A state official sued in their official capacity is considered a "person" for claims under Section 1983 only when a plaintiff is seeking injunctive relief. See Will, 491 U.S. at 71, n.10.

Plaintiffs brought claims against the Pennsylvania Horse Racing Commission, a state agency, seeking monetary damages.  There is no request for injunctive relief at this time.  Accordingly, Chuckas, in his official capacity, is not a person under Section 1983 and is immune from suit pursuant to the Eleventh Amendment.

### C. Leave to Amend

The Court of Appeals for the Third Circuit requires district courts to grant leave to amend in civil rights cases when a curative amendment is conceivable.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Although we harbor doubts as to plaintiffs' ability to cure their Section 1983 claim against Chuckas in his individual capacity to overcome his qualified immunity, we will grant leave to amend.  However, plaintiffs' Section 1983 claim against Chuckas in his official capacity, seeking punitive and compensatory relief, is legally incurable and will be dismissed with prejudice.

### IV. Conclusion

The court will grant Chuckas' motion (Doc. 4) to dismiss.  An appropriate order shall issue.

                                       /S/ CHRISTOPHER C. CONNER
                                       Christopher C. Conner, Chief Judge
                                       United States District Court
                                       Middle District of Pennsylvania

Dated:    November 5, 2018